Owen Evans

*v.*

Mary Price *et al.*

Mr. Justice Scholfield, dissenting : *

I do not concur in the opinion of the majority of the court in this case. At the time this will was made, the statute provided, "that every male person of the age of twenty-one years, and every female of the age of eighteen years, being of sound mind and memory, shall have power to devise all the estate, right, title and interest in possession, etc., * * * in and to any lands, tenements * * * and personal estate, * * * by will or testament." (Public Laws of 1871-2, p. 715.) This clearly includes persons of illegitimate birth as well as those of legitimate birth. I am aware of no language that could have been used that would have been broader and more comprehensive, within the limitations expressed. This section must, I concede, however, be construed as *in pari materia* with section 78 of the act in relation to the administration of

---

* The principal case to which this dissenting opinion belongs will be found reported in this volume, *ante,* p. 593.

estates, in force July 1, 1872, (Public Laws of 1871-2, p. 97,) which provides, that "the widow or surviving husband of a testate may, at any time within one year from the time at which the will of her or his testate husband or wife was admitted to probate, renounce, in writing, all her or his claim to the legacies and bequests made for her or him in such will, in which case she or he shall be .allowed ·the same property as if the husband or wife had died intestate." But, in my opinion, the words, "she or he shall be allowed the same property as if the husband or wife had died intestate," can not be held to have reference to the third clause of section 3 of the act in relation to the descent of property, in force July 1, 1872, (Public Laws of 1871-2, p. 352,) which provides, that "in case of the death of an illegitimate intestate, leaving no child nor descendants of a child, the whole estate, personal and real, shall descend to and absolutely vest in the widow," and thus establish, in regard to persons dying without a child or descendants of a child surviving them, one rule in regard to the wills of those who are of legitimate birth, and another rule for the wills of those who are of illegitimate birth, because—

*First*—Those of legitimate and those of illegitimate birth having the same right to make a will, there can only be the same right of renunciation in their widows, for the effect of the right of renunciation is the withdrawal, to the extent it exists, of the right to make a will, because a right to will, subject to the will of another, is, in practical effect, no right to make a will; and legitimacy being the rule, and illegitimacy the exception, when the General Assembly undertook to establish a single uniform rule applicable to all widows of testate husbands dying without children or descendants of children, by analogy to the laws of descent then in force, it is to be assumed they referred to the laws of descent relating to persons of legitimate birth,—the rule,—and not to the laws of descent relating to persons of illegitimate birth,—the exception.

*Second*—It was not competent, in my opinion, for the General Assembly to enact that widows of persons, in the given case of legitimate birth, should have power to renounce the provisions of the husband's will, and take one-half of the real and all of the personal estate,—leaving the will to operate upon one-half of the real estate,—and, at the same time, to enact that widows of persons of illegitimate birth should have power to renounce all of the provisions of the will, leaving nothing for the will to operate upon, for the rule is familiar, that in determining the validity of an enactment we are to look at its effect rather than its form; and so, here, giving the construction of the majority to this section 78, the question is nowise different than it would be, had the General Assembly expressly denied power to persons of illegitimate birth, in the given case, to make a will, while, at the same time, granting to persons of legitimate birth, in precisely the same situation, power to make a will of one-half of their real estate.

Our constitution guarantees that "no person shall be deprived of life, liberty or property without due process of law." (Sec. 2, art. 2.) And this is held to be equivalent in meaning to the guaranty in *Magna Charta*, that no person shall be deprived of life, liberty or property unless by the law of the land. Cooley's Const. Lim. (4th ed.) 435-437; 1 Broom & Headley's Coms. 111, 112, *159, and note 59. An act selecting particular individuals from a class, and subjecting them to peculiar rules from which others in the same class are exempt, violates this provision of the constitution, and is, therefore, not law. Cooley's Const. Lim. (4th ed.) 480-490. The effect, here, of the construction given in the opinion of the majority, is to take particular individuals,—that is to say, husbands of illegitimate birth,—from a class to which they belong, namely, husbands having neither child nor descendants of a child, and deny to them a privilege and power granted to all others of the class. I concede that, for some

purposes, persons of illegitimate birth form a distinct class, but I deny that they do so for any purpose affected by the statutory provisions under consideration. Classification, to be valid,—to be anything more than an arbitrary designation, —must rest upon an actual difference between the persons classified, when regarded with reference to the object or purpose of the classification. The difference must, in some substantial way, afford a reason why the classification should be made,—in other words, necessitate a different rule of law for the respective classes. To illustrate: Individuals may be classified, for the purpose of locomotion, into those who are lame and those who are not; for the purposes of professions or callings, they may be classified as physicians, lawyers, carpenters, etc.; for purposes of religion, they may be classified as Episcopalians, Roman Catholics, etc.; and for purposes of family pride, they may be classified with reference to the merits or demerits of their ancestors. But no one would seriously contend that either of these, or other like classifications, could be made for the purpose of the law of wills, or the law in relation to husband and wife,—and it is simply because such a classification can, in no possible view, afford a reason why one rule of law, on either of these subjects, should be applied to one class, and another rule of law, on the same subject, should be applied to the other class. Persons of illegitimate birth may, undoubtedly, on account of their *status* under the common law,—that of *nullius filius*,— be classified as respects the laws of inheritance; but, apart from that, their *status*, under the law, is precisely that of persons of legitimate birth. Blackstone says: "The incapacity of a bastard consists principally in this, that he can not be heir to any one; neither can he have heirs, but of his own body, for, being *nullius filius*, he is therefore of kin to nobody, and has no ancestor from whom any inheritable blood can be derived; * * * and, really, any other distinction but that of not inheriting, which civil policy renders necessary,

would, with regard to the innocent offspring of his parents' crimes, be odious, unjust and cruel to the last degree."

No text book of common law, and no adjudged case in any court of last resort where that law is administered, has ever come to my knowledge, wherein it is asserted that a person of illegitimate birth occupies a different relation with respect to the ownership, use and disposition of property he has himself acquired, than that occupied by a person of legitimate birth with respect to the property he has acquired, or that the relations, obligations and duties between husband and wife are different where the husband is of illegitimate birth, from what they are where the husband is of legitimate birth ; and the opinion of the majority of the court does not assert, and manifestly it could not be rationally asserted, that there are distinctions, in fact, as contradistinguished from distinctions in the common law, in these respects, affording a sufficient basis for statutory classification.

I think a rehearing should be allowed, and a judgment rendered in conformity with these views.

Mulkey and Shope, JJ.: We fully concur in the foregoing opinion of Mr. Justice Scholfield.